## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Case No. 19-cr-29 (ADM/ECW)

            Plaintiff,

    v.                                    **REPORT AND**
                                 **RECOMMENDATON**

Andre Billy Bryant, Sr.,

            Defendant.

On February 5, 2019, Defendant Andre Billy Bryant, Sr. ("Bryant" or "Defendant") was indicted on one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1); one count of Possession with the Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of Possession of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Dkt. No. 1.)  This matter is before the Court on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21).  This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court held a motion hearing on April 10, 2019.  Allen A. Slaughter, Jr., Assistant U.S. Attorney, appeared on behalf of the United States of America and Manny K. Atwal, Office of the Federal Defender, appeared on behalf of Bryant, who was present at the hearing on the instant motion.  During the hearing on the motion to suppress, the Government presented a witness, Special Agent Vuepao Thao, and offered five exhibits

pertaining to search warrants.  The parties have filed their respective post-hearing memoranda.  For the reasons stated below, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21) be denied.

# I.    FACTUAL BACKGROUND

### A.    The Application for Search Warrant

At the April 10 hearing, Vuepao Thao, a Special Agent ("SA") to the Minnesota Commerce Fraud Bureau ("CFB"),[1] testified about his investigation of automotive insurance fraud allegedly involving Bryant.  SA Thao testified he submitted an Application for Search Warrant and Supporting Affidavit to Hennepin County District Judge Tamara Garcia on July 11, 2018 for Bryant's person, an apartment located in Minneapolis, and a 2014 Cadillac Sedan with the license plate XXX TRW.  (Tr. 15-16;[2] Gov't Ex. 1.)  The application and warrant authorized the search for documents, including documents containing the names and/or identifiers of individuals that have communicated with persons to obtain automobile insurance; records identifying all financial institutions used to facilitate payments made to and from customers; currency, bank books, deposit slips, and bank statements; electronic communication documents; documentation pertaining to automobile insurance companies; electronic storage devices

---

[1]    The CFB is the primary Minnesota state law-enforcement agency tasked with specifically investigating criminal investigations that are related to insurance fraud and/or related crimes.  (Tr. 9-10.)

[2]    The transcript of the criminal motions hearing ("Tr.") is found at Docket No. 32.

and the data from those devices; proof of residency, and documentation relating to the

internet; programs and manuals related to operating systems or applications; and the

passwords and documentation needed to examine or operate devices, software, and/or

information seized.  (*Id.*)

As to the basis for the warrant, the supporting affidavit described the following

ongoing investigation related to insurance fraud:

- On May 1, 2018, CFB Special Agent Kritzeck, interviewed a cooperating individual identified as L.H. who stated in April 2018 he/she purchased auto insurance from an acquaintance identified as Nyeshia Davis ("Davis"). According to the informant, he/she met Davis, who was driving a white Nissan Altima, in a parking lot near his/her work where L.H. provided Davis $150.  Davis then drove a short distance across the parking lot and met with a heavy-set African American male in a newer white Cadillac where she received the insurance document.  L.H. said Davis returned giving him/her the GEICO insurance document.  L.H. stated he/she later learned the insurance policy purchased from Davis was forged and not in force with GEICO Insurance.

- On May 21, 2018, a CFB agent working as an undercover agent ("UA") contacted Davis using the information she provided L.H. and arranged to purchase an auto insurance policy from her.  The two agreed to meet later that day in Brooklyn Center.  Upon arrival, the UA observed Davis arrive in her white Nissan Altima being followed by a male driving matching the L.H.'s description in a newer white Cadillac bearing the Minnesota license plate XXX TPW.  Davis and the UA met near the UA's vehicle where the UA provided Davis with $150 of pre-recorded CFB buy money in exchange for a GEICO auto insurance policy document.  The UA then observed Davis walk to the white Cadillac and hand what appeared to be the money to the driver of the Cadillac before she and the male left the area in their respective vehicles.

- Additional CFB agents surveilled the white Cadillac and later confirmed that the driver was Bryant who is also the registered owner of the Cadillac.  In addition, CFB agents confirmed the identity of Davis who is registered to her Nissan Altima.  SA Thao also learned through Minnesota Driver Vehicle Services ("DVS") as well as Minneapolis Public Housing records that Bryant resided at the address listed in the search warrant and that since May 21,

2018, extensive surveillance had been conducted on Bryant whereby he and his white Cadillac were observed coming and going from the residence in Minneapolis that was the subject of the search warrant application. Moreover, Bryant's Facebook page showed photos of the same Cadillac parked on the street directly in front of the residence at issue.

- Both GEICO vehicle insurance documents purchased were confirmed to be forgeries in violation of Minnesota Statute § 609.611, subd. l(b).

- SA Thao reviewed the fraudulent insurance document sold to the UA and a copy of the similar document provided by L.H. and observed that the documents were near identical in layout and character placement, with the only difference being in policy numbers and expiration dates.  SA Thao firmly opined that both documents came from one single source.  SA Thao also learned from GEICO that the proof of insurance provided by Bryant and Davis to the DVS for their vehicles were fraudulent policy numbers.

- SA Thao also attested that the fraudulent insurance documents purchased were in the form of an eight-by-eleven-piece of paper outlining a policy carrier and number.  Based on his knowledge and experience, SA Thao asserted that current computer and printing technology allowed for printed documents to be easily modified for malicious purposes.

(Gov't Ex. 1, 00000137-39.)[3]

Based on the forgoing information set forth in his Affidavit, SA Thao went on to assert that:

Bryant has violated MN state statutes 609.611 and 609.63 pertaining to insurance fraud and forgery.  Your affiant believes Bryant is currently acting as an unlicensed insurance producer and selling forged and counterfeit insurance policies to unsuspecting individuals.  Some of which believe they are driving on public roadways with legitimate auto insurance.  Your affiant believes Bryant is producing these insurance policy documents on a computer or other electronic device for personal monetary gain.  Therefore, your affiant is requesting a search warrant be granted authorizing your affiant and others under your affiant's direction and control to search Bryant's person, his vehicle, and his residence for evidence that he is producing

---

[3]    During the hearing, SA Thao testified that at no time did L.H. state that he or she obtained the fake insurance policy from Bryant or that the UA inquired with Davis about the individual in the white Cadillac.  (Tr. 44-46.)

fraudulent insurance documents. This search will aid in your affiant's investigation to identify individuals that have previously purchased insurance policies from Bryant and inform them that their insurance policies are not in force.

(Gov't Ex. 1, 00000139.)

Judge Garcia issued the warrant and determined that there was probable cause that evidence of a crime would be located on Bryant's person, his apartment located in Minneapolis and in a 2014 Cadillac sedan with license plate XXX TRW. (*Id.* at 00000141.) However, the authorization line of the search warrant only authorized a search for Bryant and his apartment. (*Id.*) SA Thao testified he read the search warrant after receiving it from Judge Garcia and that he believed officers had a search warrant for Bryant, his Minneapolis residence, and the white Cadillac. (Tr. 25, 43.) SA Thao did not give other officers conducting the search a copy of the warrant, but verbally told the other officers that they had a search warrant and the scope of that warrant. (Tr. 43.)

## B.    Buy-Bust Operation

SA Thao also testified about a buy-bust operation involving Bryant that took place on July 11, 2018, after Judge Garcia issued the above-described search warrant. (Tr. 43-44.) According to SA Thao, a buy-bust is a controlled law-enforcement operation that is geared towards the arrest of an individual immediately after a criminal act has occurred. (Tr. 25-26.) The goal of the operation was to show that the insurance documents sold that same day immediately before Bryant's stop were similar to the insurance documents purchased on May 21, 2018 by the UA. (Tr. 26.)

After receiving confirmation of the location for the July 11, 2018 purchase of automobile insurance, which was again the same location as the previous May 2018 undercover buy (the Brooklyn Center Wal-Mart parking lot), surveillance was set up in the area. (Tr. 26.) Surveillance was also established for both Davis and Bryant. (Tr. 26-27.) The buy had been initially scheduled for 1:00 p.m. but was rescheduled to 4:00 p.m. (Tr. 27-28.) During the surveillance, Bryant was seen heading to his apartment before his meeting with Davis at the Wal-Mart parking lot. (Tr. 28.)

Davis was observed arriving in her Nissan Altima, followed directly behind by Bryant. (Tr. 27.) They met in the eastern section of the parking lot at the Wal-Mart prior to Davis's sale of the policy, where a hand-to-hand exchange of a white piece of paper was observed between Davis and Bryant, which at that time officers perceived to be the fraudulent insurance document that the UA ultimately purchased. (Tr. 28-29, 49-50.) Davis, after leaving Bryant, then proceeded to make contact with the UA at which time the UA and Davis exchanged $150 for an automobile insurance policy. (Tr. 29, 50-51.) Unlike the preceding May 21 controlled buy, Davis did go not back to Bryant after the exchange with the UA and they parted ways differently. (Tr. 29-30, 49.) SA Thao testified that the fact that Bryant was using someone else to deliver an illegal item was indicative of criminal activity. (Tr. 54.)

SA Thao testified that it was at this point in the surveillance, given his previous knowledge, he believed the UA had been sold a fraudulent insurance policy and that Bryant had been continuing to sell fraudulent insurance policies to individuals in Minnesota since May 2018. (Tr. 30.) While the officers reviewed the policy purchased

by the UA and determined that it was similar or identical to previously purchased fraudulent policies, they did not check with the insurance company to see if it was fraudulent before stopping Davis.  (Tr. 47.)

Davis and Bryant were followed out of the parking lot by police and separately stopped.  (Tr. 30.)  SA Thao was a part of the stop-and-arrest process involving Bryant. (Tr. 31.)  Bryant was taken to custody and a search of his person was conducted incident to arrest.  (*Id.*)  Law enforcement officers discovered cell phones, wallet, cash, and a policy for Progressive insurance on Bryant's person.  (*Id.*; *see also* Gov't Ex. 1, 0000143.)  SA Thao testified that he would have conducted a traffic stop and search incident to arrest based on the controlled buy even if he did not have the search warrant from Judge Garcia because a crime had just occurred.  (Tr. 32-33.)

Officers also searched Bryant's vehicle.  (Tr. 32.)  Officers found and seized insurance documents from the glove box.  (Gov't Ex. 1, 0000143.)  In addition, $40 in cash was also found in Bryant's hands, which the officers believed was the payment by Davis to Bryant for the policy.  (Tr. 54.)  The controlled buy funds that were used for purposes of the purchase on July 11 were all found with Davis.  (Tr. 55.)

SA Thao also testified that Bryant's apartment was searched pursuant to the July 11, 2018 search warrant.  (Tr. 33.)  Officers seized a printer, insurance documents, a laptop, constructive possession documents, papers labeled "important", and a laptop. (Gov't Ex. 1, 0000143.)  During the search, officers observed a safe on the floor and located an insurance policy on the counter in the kitchen, which was almost identical to the same policy the UA had purchased during the controlled buy.  (Tr. 33.)  The safe in

the apartment was unsecured and when the agents opened the unlocked safe, they

discovered three firearms and a large quantity of small pills that appeared to be either

Ecstasy or oxycodone at the time.  (Tr. 34-35, 52.)  It was later discovered that the pills

contained fentanyl.  (Tr. 35.)

**C.    Second Search Warrant Related to Bryant's Apartment**

Based on the discovery of the items in the safe, officers drafted a search warrant to

seize the items observed in the safe at Bryant's apartment.  (Tr. 35.)  SA Thao testified

that on July 11, 2018, he submitted an Application for Search Warrant and Supporting

Affidavit to Hennepin County District Judge Daniel Moreno for Bryant's apartment in

Minneapolis in order to recover a Glock model 43, 9mm firearm; a Walther model PP,

7.6mm firearm; a Taurus model PT111, 8mm firearm; a large quantity of small green

pills that appear to be either ecstasy or oxycodone; and a small black plastic digital scale.

(Tr. 35; Gov't Ex. 2.)

The affidavit contained a similar description of the insurance fraud investigation in

its probable cause statement as was included in the application for the July 11, 2018

search warrant signed by Judge Garcia.  (Gov't Ex. 2, 00000204-206.)  The affidavit then

stated that there was reason to believe that additional evidence of a crime would be found

at the residence:

> On July 11th 2018, your affiant along with other agents of the MN CFB
> executed a search warrant at [   ] Minneapolis, MN in conjunction with an
> ongoing criminal insurance fraud investigation.  Upon entry and making the
> scene safe agents began a systematic search of the residence for evidence
> listed within the scope of the above mentioned search warrant.  While
> searching the one and only bedroom of the apartment agents observed a large
> sentry safe located on the floor of the bedroom near the closet.  The safe was

not locked and agents were able to open the door to look for items in the scope of the warrant. Upon doing so, agents observed in plain view what appeared to be several handguns and a large quantity small green pills. Upon closer inspection and while making the guns safe it was determined the guns were all loaded with ammunition and identified as such;

l.     Glock model 43, 9mm, SN:BGCP745
2.     Walther model PP, 7.6mm, SN: LPN30517
3.     Taurus model PT1l1, 8mm SN: TKU35531

Some of the green pills were observed as being contained in a clear plastic baggie packaged for resale, while the remainder of the pills which could exceed several hundred were contained in a clear plastic baggie and wrapped in a paper towel again packaged for sale. The pills were pressed with the impression of "E-7" and through your affiant's training and experience appear to possibly be either ecstasy or oxycodone.

Within the safe agents also recovered several mailings containing Bryant's name and address including books of checks, insurance documents, property records, tax records and legal documents for Bryant.

While searching the kitchen area of the residence agents also observed in plain view above the refrigerator a small black plastic digital scale.

Your affiant learned through this investigation that Bryant is a convicted felon and has convictions for aggravated armed robbery and 2nd degree murder. Agents also observed within close proximity to the unlocked safe, several children's toys and children's clothing.

(Gov't Ex. 2, 0000206-07; Tr. 37.)

Judge Moreno issued the additional search warrant on July 11, 2018 for Bryant's

apartment in order to search for and seize the above listed firearms, narcotics and scale.

(*Id.*, 0000208.) The above-listed firearms, pills, and scale were seized as part of the

search. (*Id.*, 0000210.)[4]

---

[4]     SA Thao also applied for and received from Hennepin County judges search warrants for: a DNA sample consisting of buccal saliva swabs so as to confirm the items found in the safe at Bryant's residence belonged to Bryant (Gov't Ex. 3); permission to search the contents of two laptops and cell phones seized as part of the initial search

## II.    DISCUSSION

Bryant requests that the Court suppress all evidence found in the "illegal" search of his vehicle.  (Dkt. No. 34 at 10.)  Bryant further requests that the Court review two of the State Search Warrants (Gov't Exs. 1 and 2) for probable cause.[5]  (*Id.*)

**A.    Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Bryant's Vehicle**

Bryant's basis for suppression of the items found in his Cadillac on July 11, 2018 is: (1) while the July 11, 2018 Search Warrant issued by Judge Garcia "clearly allows law enforcement to search the described apartment and the described person (Andre Billy Bryant)[,] [t]he warrant does not give authorization to search the Cadillac"; (2) the *Leon* good-faith exception does not apply; and (3) the automobile exception to the warrant requirement does not apply.  (Dkt. No. 34 at 7-9.)

**1.    Authorization to Search Bryant's Cadillac Under the July 11, 2018 Warrant Issued by Judge Garcia**

---

warrant (Gov't Ex. 4); and a warrant for the GPS tracking of Bryant's vehicle (Gov't Ex. 5).

[5]    The Court notes that Bryant proffered no argument as to why probable cause was lacking as to these search warrants.  Federal Rules of Criminal Procedure 12(b)(3) and (c)(3) provide that motions to suppress evidence "must be raised before trial or are waived, and the waiver provision 'applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion.'"  *United States v. Reynolds*, 720 F.3d 665, 673 (8th Cir. 2013) (quoting *United States v. Spotted Elk*, 548 F.3d 641, 656 (8th Cir. 2008)).  Bryant's failure to affirmatively provide the Court with support for the motion as it relates to the warrants is a sufficient basis for denial of the motion.  *United States v. Rosetter*, No. 10-cr-83 (JNE/JSM), 2010 WL 5184991, at *23 (D. Minn. Oct. 1, 2010), *R.&R. adopted*, 2010 WL 5173155, (D. Minn. Dec. 13, 2010) (citations omitted).  In any event, the Court has reviewed the warrants and will address whether they are supported by adequate probable case.

The Fourth Amendment provides that "no Warrants shall issue . . . [unless] **particularly describing the place to be searched**, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The Fourth Amendment's particularity requirement avoids "a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

Courts judge compliance with the particularity requirement according to "a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (internal quotation marks omitted). "The [F]ourth [A]mendment requires that a search warrant's description of the evidence to be seized be 'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'" *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (quoting *United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978)).

The Search Warrant at issue provides in relevant part:

TO: **VUEPAO THAO(S)**, (A) PEACE OFFICER(S) THE STATE OF MINNESOTA.

WHEREAS, **VUEPAO THAO** has this day on oath, made application to the said Court **applying for issuance of a search warrant to search the following described** Premise(s) **motor vehicle**(s) or person(s):

- **Andre Billy Bryant DOB [XX/XX/XXXX], further described blk male, 5'9" 250lbs**
- **[XXX XXXXX] St NE, Apt [XXX], further described as a multi-unit apartment structure**
- **MN license [XXX]TRW with VIN [XXXX], further described 2014 white Cadillac sedan.**

11

\* \* \*

**NOW, THEREFORE, the Court finds that probable cause exists for the issuance of a search warrant upon the following grounds:**

1.      **The property above-described was used as a means of committing a crime.**
2.      **The possession of the property above-described constitutes a crime.**
3.      **The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.**

**The Court further finds that probable cause exists to believe that the above-described property and things will be at the above described premise(s), motor vehicle(s), on the described person(s).**

NOW, THREFORE, YOU **VUEPAO THAO, STEVE KRITZECK** THE PEACE OFFICERS(S) AFORESAID, **AND ALL OTHER PERSONELL UNDER YOUR DIRECTION AND CONTROL** ARE HEREBY COMMANDED BETWEEN THE HOURS OF 7:00 A.M. AND 8:00 P,M. **ONLY TO SEARCH THE DESCRIBED PREMISE(S), THE DESCRIBED PERSON(S), FOR THE ABOVE-DESCRIBED PROPERTY AND THINGS**, AND TO SEIZE SAID PROPERTY AND THINGS AND TO RETAIN SAID PROPERTY AND THINGS IN CUSTODY SUBJECT TO COIJRT ORDER AND ACCORDING TO LAW.

(Gov't Ex. 1, 00000141 (**bold** emphases original; **bold underlined** emphases added).)

Bryant now asserts that the search warrant did not authorize the search of his vehicle because the last sentence of the search warrant omitted any reference to the vehicle, while authorizing the search of his person and residence (i.e., "ONLY TO SEARCH THE DESCRIBED PREMISE(S), THE DESCRIBED PERSON(S), FOR THE ABOVE-DESCRIBED PROPERTY AND THINGS").  However, the search warrant signed by Judge Garcia also set forth that the application by SA Thao sought to search Bryant's vehicle, the search warrant set forth the items to be search for and seized, the

search warrant specifically asserted that there was "probable cause **for the issuance of the search warrant**," and the search warrant stated that "probable cause exists" to believe that the items listed in the search warrant "will be at the above described premise(s), motor vehicle(s), on the described person(s)[,]" which included Bryant's white Cadillac.

The Court finds that the search warrant accurately described in detail the items subject to search, including the Cadillac, with sufficient specificity to comply with the Fourth Amendment. A reviewing court must evaluate the search warrant in its entirety and in a commonsense manner. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). As set forth above, the Fourth Amendment requires that a search warrant particularly describe the place to be searched and the things to be seized. The search warrant at issue satisfies both requirements. The warrant identifies the vehicle and contains a detailed list of the objects of the search. While it is true that the warrant does not contain specific language authorizing officers to search the vehicle for these items, the Court finds that the Fourth Amendment does not require such specific talismanic language in the warrant, especially since the remainder of the language in the document issues a warrant for the search of the vehicle for which Judge Garcia specifically found there is probable cause to search for the things to be seized. In other words, the warrant adequately specifies and authorizes the places to be searched, including the vehicle.

As such Bryant's motion to suppress the search of his vehicle based on a lack of particularity as to the authorization in Judge Garcia's July 11, 2018 search warrant should be denied.

2.    *Leon* **Exception**

Because the search warrant adequately authorized the search of the automobile

and was supported by probable cause (as set forth below), this Court need not determine

whether the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984),

should apply.  The Court notes, however, that even if the warrant was deficient, the

officers' reliance on the warrant would have been reasonable under *Leon*.

Under *Leon*, "'evidence seized pursuant to a search warrant issued by a [judge]

that is later determined to be invalid[] will not be suppressed if the executing officer's

reliance upon the warrant was objectively reasonable.'"  *United States v. Houston*, 665

F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th

Cir. 2007)).  In *Leon*, the court stated that "'searches pursuant to a warrant will rarely

require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate

normally suffices to establish' that a law enforcement officer has 'acted in good faith in

conducting the search.'"  468 U.S. at 922 (citations omitted).  However, the *Leon* court

noted that there are certain instances when "the purpose of the exclusionary rule—

deterring police misconduct—will not be served by suppressing illegally seized

evidence."  *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987); *Leon*, 468 U.S. at

922-23.  "When a police officer acts in an objectively reasonable manner in reliance on a

subsequently invalidated search warrant, there is no rational reason for suppressing the

fruits of the search."  *Martin*, 833 F.2d at 755.  The Court's "good-faith inquiry is

confined to the objectively ascertainable question whether a reasonably well trained

officer would have known that the search was illegal despite the magistrate's

authorization." *Leon*, 468 U.S. at 923 n.23. In this regard, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

> (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431). The Eighth Circuit has found the *Leon* exception may apply to warrants that are insufficiently particular or overbroad. *See, e.g.*, *United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005) (affirming finding that good-faith exception applied to overly broad warrant); *United States v. Curry*, 911 F.2d 72, 77-78 (8th Cir. 1990) ("[T]he *Leon* exception is not automatically inapplicable in every case where a warrant is found invalid on the ground that it is insufficiently particular."). Relevant factors include, among other things, whether the warrant was issued by an unbiased judge, whether the officer who requested the warrant was the same officer who executed the warrant, whether there was probable cause for the search, whether the application was attached to the warrant, and whether, in the context of the warrant, the officer had a reasonable belief the warrant was limited to the seizure of more particular items. *See, e.g.*, *Henderson*, 416 F.3d at 695; *Curry*, 911 F.2d at 78.

In this case, Bryant has not alleged—and the Court does not find—that the affidavit contained a false statement, or that Judge Garcia wholly abandoned her judicial role in issuing the search warrant. As to the third exception, Bryant provided no specific argument that the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable (only seeking a four-corners review) and as set forth below, this Court has concluded that sufficient probable cause existed to issue the search warrant as to the automobile. Finally, as to the fourth exception, Bryant argued that the *Leon* does not apply because it "does not protect searches that exceed the scope authorized by the warrant." (Dkt. No. 34 at 8.) Bryant goes on to argue that SA "Thao is an experienced officer who testified that he read the search warrant prior to the execution of the warrant and then gave that information to his officers. He should not be protected by the *Leon* good-faith exception." (*Id.* (citation omitted).)

However, as set forth above, given that the language of the warrant adequately specifies and authorizes the issuance of the warrant and specifies that there is probable cause for the search of the vehicle, the Court concludes that it was not "entirely unreasonable" for SA Thao to rely on the issuance of the warrant for the search of Bryant's vehicle. The responsibility of the inadvertent omission of the vehicle in the final authorization line "must be borne by the [issuing official], as the final reviewing authority." *Curry*, 911 F.2d at 78 (citation and marks omitted) (alterations in original). "Because the exclusionary rule does not serve to deter the errors of judges, but rather the errors of police officers, suppression in this case would not further the purposes of the

16

rule." *Id.* (citations omitted). Therefore, even if the search warrant was deficient, the officers' reliance on the warrant to search Bryant's vehicle would have been reasonable under *Leon*.

### 3. Automobile Exception to the Warrant Requirement

Even assuming that the search warrant did not authorize the search of Bryant's vehicle and the *Leon* exception does not apply, the Court still concludes that the motion to suppress evidence found in Bryant's vehicle on July 11, 2018 should be denied. Searches without a warrant are per se unreasonable, subject to a few well-established exceptions, which includes an automobile exception. *See United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). "The automobile exception to the Fourth Amendment allows police officers to conduct a warrantless search of a vehicle if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Brown*, 550 F.3d 724, 727 (8th Cir. 2008) (internal quotation marks omitted); *see also United States v. Edwards*, 891 F.3d 708, 712 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 349 (2018) ("Under the automobile exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the car contains contraband or other evidence."). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)). The Supreme Court has explained that the reason for this exception lies in the lower expectation of

privacy in vehicles and their unique mobility.  *See California v. Carney*, 471 U.S. 386,

390-91 (1985).  "If there is probable cause to believe a vehicle contains evidence of

criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21 (1982), authorizes a search

of any area of the vehicle in which the evidence might be found."  *Arizona v. Gant*, 556

U.S. 332, 347 (2009).

According to Bryant, officers lacked the necessary probable cause to rely on the

automobile exception to search the vehicle.  (Dkt. No. 34 at 9.)  In support of this

argument, Bryant points to the fact that unlike the first buy in May 2018, he and Davis

were seen together before, not after, the sale during the July 2018 buy.  (*Id.*)  Bryant also

relies on SA Thao's testimony that officers did not verify the fraudulent nature of the

document exchanged between Davis and Bryant prior to the search of Bryant's car and

argues that the money exchanged between Bryant and Davis could have been for

something other than an insurance policy.  (*Id.*)

The information SA Thao obtained throughout his investigation, along with the

July 11, 2018 controlled buy, provided ample probable cause to search Bryant's Cadillac

for evidence of insurance fraud.  As discussed above, by July 11, 2018, SA Thao had

received information regarding Bryant's alleged criminal activity, including:

(1) information from L.H. that he or she had purchased a fraudulent GEICO automobile

insurance policy (later confirmed to be fraudulent by law enforcement) from Davis who

had received the insurance from a person matching Bryant's description in a white

Cadillac; (2) the May 21, 2018 controlled buy between the UA and Davis of a confirmed

fraudulent GEICO automobile insurance during which time Bryant was observed

following Davis in a white Cadillac and receiving money from Davis after the transaction

with the UA; and (3) the confirmation that the GEICO automobile insurance claimed by

Bryant for his Cadillac was also fraudulent.  Again, on July 11, 2018, a buy between

Davis and a UA for an insurance policy was arranged.  Similar to the previous buys of

fraudulent policies Bryant showed up in his Cadillac to the arranged place for the

purchase of the insurance policies.  While Bryant asserts that Davis was "running the

show" (Dkt. No. 34 at 9), that does not mean that Bryant was not assisting Davis with her

allegedly illegal activities.  Indeed, Bryant was present at the scene during every sale

involving Davis.  Officers also observed a hand-to-hand exchange of a white piece of

paper between Davis and Bryant prior to the July 11 controlled buy, which at that time

officers perceived to be the fraudulent policy purchased by the UA.  While officers did

not call the insurance company to confirm the fraudulent nature of the document before

the stop, officers determined that the policy sold to the UA was similar or identical to

previous fraudulent policies.  Even though SA Thao and the officers working with him

may not have had irrefutable proof that Bryant was involved with a scheme to sell

fraudulent insurance paperwork to the UA (or carrying evidence thereof with him) at the

time of the July 11 search of the vehicle, such irrefutable proof is not what probable

cause requires.  *See Edwards,* 891 F.3d at 711 (holding that the probable cause standard

is "not a high bar," and it "requires only a probability or substantial chance of criminal

activity, not an actual showing of such activity") (quoting *District of Columbia v. Wesby*,

138 S. Ct. 577, 586 (2018)).  The Court concludes that the totality of the information

available to the officers at the time of the search of the vehicle created a fair probability

that a search of the Cadillac would reveal contraband or other evidence. Therefore, the motion to suppress the search and seizure of evidence from Bryant's vehicle on July 11, 2018 should also be denied under the automobile exception.

**B.     Whether Search Warrants (Gov't Exs. 1 and 2) are Supported by Probable Cause**

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. *Gates*, 462 U.S. at 236. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231)). In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39 (citation omitted)*; see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as a

20

reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge.").  As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

Given this standard of review, the Court will now proceed with determining whether the search warrants at issue in this case at Government Exhibits 1 and 2 are supported by probable cause.[6]

**A.    Government Exhibit 1: July 11, 2018 Search Warrant of Bryant's Person, Residence, and Vehicle**

As set forth above, the application for the search warrant included that SA Thao had: (1) information from L.H. that he or she had purchased a fraudulent GEICO automobile insurance policy (later confirmed by law enforcement) from Davis who had received the insurance from a person matching Bryant's description in a white Cadillac; (2) information regarding a May 21, 2018 controlled buy between the UA and Davis of a

---

[6]    The Court notes that Bryant did not seek review of the search warrants found at Government Exhibits 3 through 5.

confirmed fraudulent GEICO automobile insurance during which time Bryant was observed following Davis in a white Cadillac and receiving money from Davis after the transaction with the UA; and (3) confirmation that the GEICO automobile insurance claimed by Bryant for his Cadillac in public records was also fraudulent. In addition, the application included information from public records, surveillance, and social media demonstrating that Bryant resided at the residence listed in the search warrant and that in SA Thao's experience fake insurance documents could easily be produced by Bryant using computers and printers. Such computers and printers could have been located at the residence.

Based upon the totality of the circumstances, the Court concludes that the warrant application for the Search Warrant at Government Exhibit 1 contains sufficient information from which a reasonable person could conclude that there was a fair probability that evidence of a crime related to insurance fraud as listed in the search warrant would be located on Bryant's person, his residence, and/or his vehicle.[7] Therefore, Bryant's motion to suppress as it relates to the July 11, 2018 search warrant at Government Exhibit 1 should be denied.

---

[7] Even assuming that the search warrant for Bryant's person lacked probable cause or was not covered by *Leon* exception, the Court finds that the search of Bryant's person was proper as a search incident arrest, given that there was probable cause to arrest him for the same reasons set forth in this Court's discussion of the automobile exception (*supra*, Section II.A.3). *See Riley v. California*, 573 U.S. 373, 384 (2014) (citing *United States v. Robinson*, 414 U.S. 218, 235-36 (1973)); *see also United States v. Cabrera-Reynoso*, 195 F.3d 1029, 1032 (8th Cir. 1999).

**B.    Government Exhibit 2: July 11, 2018 Second Search Warrant for Bryant's Residence**

The application for the search warrant included that during the execution of the initial search warrant earlier in the day (Gov't Ex. 1) at Bryant's residence in search of evidence related to insurance fraud, officers observed in an unlocked safe three loaded firearms and a large quantity small green pills, whose markings in SA Thao's experience and training appeared to possibly be either ecstasy or oxycodone. The search warrant also set forth that a digital scale was observed in plain view on top of a refrigerator. The search warrant also provided that Bryant is a convicted felon and that the above items observed constituted illegal contraband.

Based upon the totality of the circumstances, the Court concludes that the warrant application for the Search Warrant at Government Exhibit 2 contains sufficient information from which a reasonable person could conclude that there was a fair probability that evidence of a crime related to felon in possession of a firearms and large quantity of narcotics could be found in Bryant's residence. *See United States v. Abdul-Ahad*, 08-cr-142 (DSD/SRN), 2008 WL 5458987, at *2 (D. Minn. Oct. 28, 2008), *R.&R. adopted*, 2009 WL 35473 (D. Minn. Jan. 5, 2009) ("Agent Voth's affidavit provided sufficient probable cause for the issuance of the search warrant for the Meal Ticket Foods store. There was a fair probability to believe that a firearm was in the possession, custody, or control of a convicted felon, Vito Williams, who was prohibited from receiving or possessing a firearm."). Therefore, Bryant's motion to suppress as it relates

to the July 11, 2018 search warrant at Government Exhibit 2 pertaining to Bryant's

residence should be denied.

### III.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED**

**THAT:** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and

Seizure (Dkt. No. 21) be **DENIED**.


DATE:        June 7, 2019                        *s/ Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge


### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the
District Court and is therefore, not appealable directly to the Eighth Circuit Court of
Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a
magistrate judge's proposed finding and recommendations within 14 days after being
served a copy" of the Report and Recommendation.  A party may respond to those
objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All
objections and responses must comply with the word or line limits set forth in LR
72.2(c).